IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

THOMAS H. FLUHARTY,
Trustee of the Chapter 11 Bankruptcy Estates of
Dennis Ray Johnson, II (No. 3:16-BK-30227);
DJWV2, LLC (No. 3:16-BK-30062);
Southern Marine Services, LLC (No. 3:16-BK-30063);
Southern Marine Terminal, LLC (No. 3:17-BK-30064);
Redbud Dock, LLC (No. 3:16-BK-30398);
Green Coal, LLC (No. 3:16-BK-30399);
Appalachian Mining & Reclamation, LLC (No. 3:16-BK-30400)
Producer's Land, LLC (3:16-BK-30401);
Producer's Coal, Inc. (3:16-BK-30402);
Joint Venture Development, LLC (No. 3:16-BK-30403),

        Plaintiffs,

v.              CIVIL ACTION NO. 3:17-4220

PEOPLES BANK, NA,
PEOPLES INSURANCE AGENCY, LLC, and
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK.

        Defendants.

**ORDER**

Pending before the Court, among other motions, is Defendant Peoples Insurance Agency, LLC's ("Peoples Insurance") Motion to Dismiss (ECF No. 23). In that motion, Peoples Insurance requests that this Court dismiss Count Ten of Plaintiff's Complaint, titled "Bad Faith Claim Against Insurers." Peoples Insurance argues that Plaintiff's bad faith claim should be dismissed against it because it is not an insurer, but is instead an insurance broker. Due to its status as a "middleman between the insured and the insurer," Peoples Insurance claims that the contractual obligations that would give rise to a bad faith claim do not exist between it and the group of entities for which Plaintiff is the trustee ("Coal Group"). And the relevant statutory obligations do not

apply to an insurance broker in this context. The Court agrees with Peoples Insurance, and thus, as explained below, **GRANTS** Defendant Peoples Insurance's Motion to Dismiss (ECF No. 23).

This case—having been initiated by the filing of a 68-page complaint, with roughly 50-pages in attachments—has a long and winding factual narrative. For part of the factual background of this matter, refer to the Court's previously filed Order Granting Defendant Burkons's Motion to Dismiss. *Fluharty v. Peoples Bank, NA*, No. 3:17-4220 (ECF No. 87), 2018 WL 1954829, at *1-*2 (S.D.W. Va. Apr. 24, 2018) (Chambers, J.). In this order, the Court will not traverse the complete factual development that led to the claims currently before it. However, the Court will simply provide a summary of the limited scope of facts that are relevant to Peoples Insurance's Motion to Dismiss.

After obtaining financing for the acquisition and operation of various entities comprising the Coal Group[1], one of the Coal Group entities, Southern Marine Terminal, LLC ("SMT"), obtained insurance on a recently leased coal-wash facility. *Compl.*, at ¶¶ 33, 34. SMT had leased the facility, called the Ivel wash plant, located in Floyd County, Kentucky, from Prater Creek Coal Corporation ("Prater"). *Id.*

Mr. Johnson, both individually and on behalf of various Coal Group entities, had obtained the funding for the business growth from Peoples Bank, NA ("Peoples Bank"). Although Peoples Bank and Peoples Insurance are separate business entities, they have, at times, simultaneously shared at least one common officer. *Pl.'s Resp. to People Insurance's Mot. to Dismiss*, ECF No. 33, at 6. Due to the closeness of those two businesses, SMT obtained insurance for the Ivel wash plant through Peoples Insurance. *Compl.*, at ¶ 34. SMT, with Peoples Insurance serving as the

---

[1] One of the debtors for whom Plaintiff serves as trustee, Dennis Ray Johnson, owns all or a substantial portion of the other Coal Group entities. *Compl.*, ECF No. 1, at ¶ 1.

insurance broker, entered in to an insurance policy with Great American Insurance Company of New York ("GAI"), another defendant in this case.

In August 2014, roughly two years after first leasing the Ivel wash plant, SMT agreed to purchase it from Prater. *Id.* at ¶ 35. In connection with that seller-financed purchase, SMT "directed Peoples Insurance to add [Prater] as a loss payee/additional insured on the property loss coverage." *Id.* Soon, the Ivel wash plant, vital to the operation of the Coal Group, would experience an unfortunate property loss.

On May 18, 2015, a coal beltline at the Ivel plant broke and fell. *Id.* at ¶ 48. With the beltline out, the plant was largely left inoperable for a period of time. *Id.* Allegedly, this disruption not only threatened the operation of the plant, but also the value of the entire Coal Group, causing modifications to the plant's operations and forcing additional expenditures in an effort to stay afloat. *Id.*

SMT filed a claim on its insurance policy with GAI for the Ivel wash plant loss. SMT reported a claim for both the property loss itself, as well as the business interruption. *Id.* ¶ 50. Although SMT attempted to maintain business operations through the pendency of the claim's processing, Plaintiff alleges that those efforts were undermined by the acts and omissions in the treatment, processing, and payment of its Ivel-related claims. *Id.* Ultimately, Plaintiff contends that these acts and omissions caused Prater to declare SMT in default of its financing agreement for the Ivel facility.

Emanating from those alleged acts and omissions, Plaintiff has asserted a bad faith claim arising under a Kentucky common law obligation to act in good faith, the Kentucky Consumer Protection Act ("KCPA") (Ky. Rev. Stat. Ann. § 367.110 *et seq.*), and the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") (Ky. Rev. Stat. Ann. § 304.12-230). *Compl.*, at ¶ 218.

Peoples Insurance argues that Plaintiff cannot properly state a claim against it under either the common law duty or the duties derived from the statutory provisions. The Court agrees with Peoples Insurance. After laying out the standard on consideration of a 12(b)(6) motion to dismiss, the Court will address Plaintiff's bases for the bad faith claim. In hashing out its reasoning, the Court will discuss each of those bases in reverse order.

To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Further, the Court accepts the factual allegations in the complaint as true. Those allegations, however, "must be enough to raise a right to relief above the speculative level . . . . " *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

Assessing first the applicability of the KUCSPA to Peoples Insurance, the Court finds that Peoples Insurance is not subject to claims under that statute in this case. Although not stated explicitly, the Kentucky case law strongly militates toward the inapplicability of the KUCSPA to insurance agents or brokers.

Both parties largely rely upon the same case, *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000), but differ in their respective readings of the case. Plaintiff contends the lack of an express prohibition against holding insurance agent accountable under the KUCSPA in the caselaw, means that insurance agents or brokers are subject to the KUCSPA's obligations. *Pl.'s Resp. to People Insurance's Mot. to Dismiss*, at 3-4. Thus, Plaintiff argues, he may bring a claim against Peoples Insurance under the KUSCPA. *Id.* Unlike Plaintiff, Peoples Insurance, focuses upon what the court in *Davidson* said, instead of what the court did not say. *Mem. in Supp. of Mot. to Dismiss*, ECF No. 24, at 7-8. The court in *Davidson*, as pointed out by Peoples Insurances, provided that the KUCSPA, and bad faith claims generally, applies "only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 102 (KY 2000) (quoting KRS 304.1-040). Indeed, "[t]he gravamen of the [KUCSPA] is that an insurance company is required to deal in good faith . . . with respect to a claim which the insurance company is *contractually obligated* to pay." *Id.* at 100 (emphasis original).

The Court agrees with Peoples Insurance's reading of *Davidson*, and believes that the case counsels against applying the KUCSPA to Peoples Insurance. Limiting the reach of the KUCPSA, the Supreme Court of Kentucky relied upon the contractual obligation involved in an insurance company's relationship to an insured. *Id.* at 100-02 (generally emphasizing that bad faith claims, and the KUCSPA, depend upon the contractual obligation). The Kentucky court reviewed its

previous distillations of bad faith claims under Kentucky law. Condensing both statutory and common law bad faith claims, the Supreme Court of Kentucky, in a 1993 case called *Wittmer v. Jones*, had "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions." *Id.* at 100. That test has three elements that an insured must prove:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claims; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-47 (Ky. 1986) (Leibson, J., dissenting)). The *Davidson* court, in citing that test, emphasized the first element. *Davidson*, 25 S.W.3d at 100. That an "insurer must be obligated . . . under the terms of the policy" requires that the insurer and the insured have some contractual agreement that imposes upon the insurer an obligation to act. *See id.*

But in this case, Peoples Insurance lacks a contractual obligation to act with regard to any Coal Group claim. Peoples Insurance was merely a broker of insurance policies. *Reply in Supp. of Mot. to Dismiss*, ECF No. 39, at 4. Plaintiff's Complaint lacks any allegation that a Coal Group entity entered into an insurance contract with Peoples Insurance. *Mem. in Supp. of Mot. to Dismiss*, at 8. Certainly, Peoples Insurance facilitated the obtaining of the insurance policy. However, GAI, not Peoples Insurance, was the insurer; GAI, not Peoples Insurance, held the obligation to pay claims. *Compl.*, at ¶¶ 34, 50, 218. Due to that lack of a contractual obligation, Peoples Insurance was not an insurer covered under the KUCSPA. *See Davison*, 25 S.W.3d at 98 ("[S]uffice it to say that this comprehensive regulatory scheme [implementing the KUCSPA] applies only to insurance

companies and their agents in the negotiation, settlement[,] and payment of claims made against policies, certificates[,] or contracts of insurance.").

As a point of clarification, Plaintiff appears to misapprehend the use of "agent" throughout some of the caselaw discussions. Plaintiff cites the quotes in *Davidson* which instruct that bad faith claims may be held against "insurance companies and their agents" to support his argument that Peoples Insurance may be on the hook for KUCSPA violations. This reading, however, conflates the colloquial reference to an "insurance agent"— meaning a broker of insurance policies that does enter in to insurer agreements—and an agent of an insurer, within the context of a legally imposed principle/agent relationship. *See Pl.'s Resp. to Peoples Insurance Mot. to Dismiss*, at 3-6. Kentucky courts have clarified that an insurance broker is merely a "middleman." *Travelers Fire Ins. Co. v. Bank of Louisville*, 243 S.W.2d 996, 998 (KY 1951) ("An 'insurance broker' is one who acts as a middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by himself, whereas an 'Insurance agent' is one who represented an insurer under an employment by it."); *Daugherty v. Am. Express Co.*, No. 3:08-CV-00048, 2010 WL 4683758, at *3 (W.D. Ky. Nov. 12, 2010) (citing *Western Leasing, Inc. v. Acordia of Ky., Inc.*, No. 2008-CA-0022370-MR, 2010 WL 1814959, at *9 (Ky.Ct.App. May 7, 2010)). In this case, from the face of the Complaint, the Court finds that Peoples Insurance was merely a broker, and was not an employee of, or under a legal agency relationship with, GAI.[2]

---

[2] A colloquial "insurance agent" may certainly become an agent of the insurer. *See Travelers Fire Ins. Co.*, 243 S.W.2d at 998. In *Winburn v. Liberty Mut. Ins. Co.*, the court analyzed whether various claims, including one for bad faith, could be stated an insurance "agent." 933 F.Supp. 664, 665-67 (E.D. Ky. 1996). Upon consideration of a motion to remand, and addressing an argument that the insurance agent had been fraudulently joined, the court found that a bad faith

Turning to the second basis for Plaintiff's bad faith claim, the KCPA, the Court likewise finds that the statute does not apply to Peoples Insurance in this case. Courts in Kentucky read the "language of the [KUCSPA as] plainly contemplate[ing] an action by a purchaser against his immediate seller." *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky.Ct.App. 1992). To accurately encompass that type of action, "[t]he legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act." *Id.* Within the context of insurance contracts, this means that under the KCPA, "[t]he insured who purchased the policy is the one who may properly have a claim for unfair practices *against the insurer*." *Helton v. Am. Gen. Life Ins. Co.*, 946 F.Supp.2d 695, 702 (W.D. Ky. 2013) (internal quotation marks omitted) (quoting *Anderson v. Nat'l Sec. Fire and Cas. Co.*, 870 S.W.2d 432, 435-36 (Ky.Ct.App. 1993)). In this case, however, the Coal Group entities were in privity of contract with GAI, the holder of the policy, not Peoples Insurance, the broker.

A district court in the Western District of Kentucky recently addressed a similar situation to this case, and reached the same conclusion at this Court. In *Helton v. American General Life Insurance Company*, the district court found that the plaintiffs could not maintain a claim under the KCPA against an insurance agent. 946 F.Supp.2d at 701-02. The lack of contractual privity between the insured and the insurance agent was the critical insufficiency. *Id.* at 702 ("The Court finds that the Plaintiffs' Kentucky Consumer Protection Act claim against Rasche fails for lack of

---

claim, both under common law and the KUCSPA, could be made against the agent. *Id.* However, in that case, the agent had called the insured *after an accident* to discuss the policy limits on a claim arising out of that accident. *Id.* at 665. In essence, the agent acted for the insurer regarding the claim, negotiation, settlement, and payment process. *See id.* In doing so, the agent opened himself up to liability for bad faith actions in informing one of the plaintiffs of a substantially lower policy limit than what actually existed. *Id.* That case presented facts that differ from the case before this Court. Here, Peoples Insurance had no involvement with the actual payment, negotiation, or settlement of the claim. Instead it appears that its role concerned only the brokering of the policy. *Compl.*, at ¶ 34, 50, 218.

privity."). The problem, said the court, "with the KCPA claim is that the Plaintiffs entered into a contract with American General [(the insurer)], not with Rasche [(the insurance agent)]." *Id.* Likewise, this Court finds privity between Peoples Insurance and the Coal Group lacking. Thus, as in *Helton*, Plaintiff's bad faith claim under the KCPA fails.[3]

Finally, relying upon the Supreme Court of Kentucky's explanation of the elements for bad faith claims, including those based upon the common law, the Court finds that Plaintiff's final basis for his bad faith claim fails. Kentucky's highest court made clear that a contractual obligation must underlie a bad faith claim. *See Davidson*, 25 S.W.3d at 100-02. As noted above, no contractual obligation to satisfy insurance claims existed between People Insurance and any of the Coal Group. Thus, Plaintiff's common law bad faith claim against Peoples Insurance also fails.

Having found that each of the bases for Plaintiff's bad faith claim against Peoples Insurance fails, the Court **DISMISSES** Count Ten against Peoples Insurance.

The Court **DIRECTS** the Clerk to send a copy of this Order to the counsel of record and any unrepresented parties.

ENTER:   June 22, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3] As in *Helton*, Plaintiff argues in his briefing that agency principles save his bad faith claim. *Pl.'s Resp. to Peoples Insurance Mot. to Dismiss*, at 4-6; *see also Helton*, 946 F.Supp.2d at 702. However, this Court finds that Plaintiff's Complaint fails to allege the necessary factual predicate to permit his bad faith claim to continue. The Complaint does not recite any concrete facts, beyond a few bald assertions, that would demonstrate an agency relationship in the carrying out of the contractual obligations under the insurance contract which would give rise to agency/principal liability.