# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

THOMAS H. FLUHARTY,
Trustee of the Chapter 11 Bankruptcy Estates of
Dennis Ray Johnson, II (No. 3:16-BK-30227);
DJWV2, LLC (No. 3:16-BK-30062);
Southern Marine Services, LLC (No. 3:16-BK-30063);
Southern Marine Terminal, LLC (No. 3:17-BK-30064);
Redbud Dock, LLC (No. 3:16-BK-30398);
Green Coal, LLC (No. 3:16-BK-30399);
Appalachian Mining & Reclamation, LLC (No. 3:16-BK-30400)
Producer's Land, LLC (3:16-BK-30401);
Producer's Coal, Inc. (3:16-BK-30402);
Joint Venture Development, LLC (No. 3:16-BK-30403),

       Plaintiffs,

v.            CIVIL ACTION NO. 3:17-4220

PEOPLES BANK, NA,
PEOPLES INSURANCE AGENCY, LLC, and
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK.

       Defendants.

## MEMORANDUM OPINION AND ORDER

Great American Insurance Company of New York's ("Great American") Motion to Dismiss is currently pending before this Court. In that motion, Great American requests that this Court dismiss Plaintiff's claims against it. Supporting that request, Great American argues, in essence, that Plaintiff has admitted noncompliance with the terms of the insurance policy. *Great Am.'s Mot. to Dismiss*, ECF No. 20, at 1-2. Based upon that alleged noncompliance, Great American contends that Plaintiff can neither maintain a breach of contract claim nor a bad faith claim. *Id.* at 2. However, as explained below, the Court disagrees with Great American's argument. Therefore, the Court **DENIES** Great American's Motion to Dismiss (ECF No. 20).

Having previously addressed other motions to dismiss filed in this case, the Court will not recount the complete, complex factual background of this case. For a brief overview of the facts of this case, review the orders already issued by this Court. *See Fluharty v. Peoples Bank, NA ("June Order")*, No. 3:17-4220, 2018 WL 3097329, at *1-*2 (S.D.W. Va. June 22, 2018) (describing background); *Fluharty v. Peoples Bank, NA ("April Order")*, No. 3:17-4220, 2018 WL 1954829, at *1 (S.D.W. Va. Apr. 24, 2018) (same).

However, the Court will provide a brief introduction of the facts particular to Great American's involvement in this matter. Great American issued an insurance policy to one of the Coal Group [1] entities, Southern Marine Terminal LLC ("SMT"), with the Policy No. MAC 4025594. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, ECF No. 21, at 3.[2] That policy, effective from November 21, 2014 until November 21, 2015, covered SMT's Ivel coal wash plant. *See id.* at 2-3. The Ivel plant suffered a belt collapse on May 18, 2018, which caused physical damage to the facility and hampered the operation of both SMT specifically and the Coal Group generally. *See June Order*, at *1-*2.

SMT submitted claims for both property loss and business interruption arising from the belt collapse. *Compl.*, ECF No. 1, at ¶¶ 34, 50. Although Great American did issue payment for the property loss claim, it refused to pay out on the business interruption claim beyond a $100,000

---

[1] The "Coal Group" refers to the group of entities for which Plaintiff is the trustee. One of the debtors for whom Plaintiff serves as trustee, Denis Ray Johnson, owns all or a substantial portion of the other Coal Group entities. *See June Order*, 2018 WL 3097329, at *1 & n.1.

[2] In its Memorandum in Support (ECF No. 21), Great American cites to the insurance policy, which it apparently meant to attach as Exhibit 1. *See Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 3 n.11. But Great American inadvertently failed to attach that exhibit. After being notified of the mistake, Great American filed the exhibit. *See Exhibit*, ECF No. 92. Regardless of the filing mishap, the Court will consider the insurance policy as part of Great American's Motion to Dismiss filings.

advance in early December of 2015. *Id.* at ¶¶ 50, 65, 80, 85, 218. From these circumstances, Plaintiff brought the current claims against Great American.

Plaintiff claims that Great American's actions constitute two separate, wrongful acts.[3] First, Plaintiff claims that Great American, in concert with the other defendants, made the payment for the property damage claim in bad faith. *Id.*; *Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, ECF No. 32, at 7. And, second, Plaintiff claims that Great American refused to fulfill its obligations to satisfy in full the business interruption claim. *Id.*; *Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, ECF No. 32, at 7.

Great American bases its argument for dismissal upon two basic premises: (1) "Plaintiff's Complaint fails to state a breach of contract claim;" (2) "Plaintiff admits [through allegations contained in his Complaint] that SMT failed to comply with the [insurance policy's] conditions precedent." *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 7, 9. The second premise, according to Great American, requires dismissal for two independent, but related reasons. Failure to comply, or allege compliance, with the conditions precedent of the insurance policy contract both prevents Plaintiff from bringing a "legal action" against Great American, and "negates coverage under the Policy." *Id.* 9-14. In other words, because SMT did not comply with the conditions precedent as

---

[3] In its Motion to Dismiss, Great American asserts that "[t]he business interruption claim is the only claim that forms the basis for the allegation against Great American, as stated in Count Ten of that Complaint." *Great Am.'s Mot. to Dismiss*, at 2. The Court, however, does not read Plaintiff's Complaint as cabining his claims against Great American to just those matters related to the business interruption claim. Indeed, Plaintiff's response to Great American's motion bolsters the Court's view. Plaintiff agues that it alleges bad faith regarding both the business interruption claim *and* the property damage claim. *See Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, at 7. Therefore, based upon this Court's reading of Plaintiff's claims and Great American's motion to dismiss "[all of] Plaintiff's claims against Great American," *Great Am.'s Mot. to Dimiss*, at 1, the Court will address the sufficiency of Plaintiff's compliant regarding both the property loss and the business interruption claim.

laid out in the contract, he cannot bring suit under the contract, and the policy coverage terminated, thus there was no effective obligation under which Plaintiff can state a claim.

Specifically, Great American focuses upon Plaintiff's, or SMT's, failure "to submit to an examination under oath [or] provide proof of loss." *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 12. According to the insurance policy contract, those two conditions precedent must be fulfilled before "[an insured] may bring a legal action against [Great American] under this [policy]." *Id.* at 3. Great American points out that Plaintiff "admits that SMT failed to comply" with these requirements. *Id.* at 9. As such Great American argues that Plaintiff cannot maintain a lawsuit against it under the insurance policy contract.

In addition to arguing that Plaintiff improperly commenced this action, Great American contends that Plaintiff's failure to satisfy those two conditions precedent prior to filing suit "negates coverage under the Policy." *Id.* at 13. Failure to comply with the policy contract's terms, Great American reasons, breaches the contract, and thereby ends coverage. Thus, where no coverage exists, Great American contends that Plaintiff may not maintain his bad faith claims on behalf of SMT and the Coal Group. Cognizant of these arguments made by Great American, the Court reviews Plaintiff's Complaint under the 12(b)(6) standard.

To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when

a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Further, the Court accepts the factual allegations in the complaint as true. Those allegations, however, "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

Hearing this case under federal question subject matter jurisdiction with supplemental state law claims, the Court must apply the choice of law analysis of the forum state to determine what law applies to the claims. *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205-06 (4th Cir. 1988) ("[I]n absence of a compelling federal interest which dictates otherwise, the [rule of applying the forum's choice of law analysis] should prevail . . . ."); *see also Mitchell v. HCL Am., Inc.*, 190 F.Supp.3d 477, 487-88 (E.D.N.C. 2016) ("In federal question cases with supplemental state law claims, the court applies the forum state's choice of law analysis absent an 'overwhelming federal policy that requires the court to formulate a choice of law rule as a matter of independent federal judgment.'" (quoting *In re Merritt Dredging Co., Inc.*, 839 F.2d at 206)). As such, the Court applies West Virginia conflicts of law principles to determine which law applies to the insurance policy.

Under West Virginia conflicts of law analysis, a court reviewing questions regarding an insurance policy should apply the conflicts rules applicable to contracts. *Howe v. Howe*, 625 S.E.2d 716, 721 (W. Va. 2005). Generally, the law of the state where the policy was issued and performed controls an insurance contractual relationship. *Kenney v. Indep. Order of Foresters*, No. 3:12-CV-123, 2013 WL 1314596, at \*4 (N.D.W. Va. Mar. 27, 2013) (citing *Lee v. Saliga*, 373 S.E.2d 345, 348 (W. Va. 1988)); *see also Mass. Mut. Life Ins. v. Factory Mut. Ins. Co.*, No. 3:05-CV-69, 2007 WL 3273452, at \*2 (N.D.W. Va. 2007) (citing same). But West Virginia courts recognize multiple exceptions to that general rule of application. The place where the policy was issued and performed will control unless: (1) the parties made a choice of applicable law in the contract; (2) the other state law offends West Virginia public policy; or (3) another state has a more "significant relationship" to the parties or the policy. *See Howe*, 625 S.E.2d at 721-22; *Kenney*, 2013 WL 1314596, at \*4; *Mass. Mut. Life Ins. Co.*, 2007 WL 3273452, at \*1-\*2. In this case, the policy was issued in Kentucky, to a Kentucky company, and the loss at the center of the claims against Great American occurred in Kentucky. *See Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 6. And none of the three exceptions to the general rule apply in this case. Therefore, the Court will proceed to analyze Great American's motion under the substantive law of Kentucky.

Turning to Great American's first argument for dismissal, the Court does not find it convincing. Great American argues that because "Plainitff's Complaint . . . only vaguely alleged that Great American has breached its contract," Plaintiff's claims must be dismissed as a matter of law. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 7-8. Great American attempts to advance its argument syllogistically, building upon two predicates. First, it asserts that "a first-party bad faith claim *is* predicated upon providing a breach of contract claim." *Great Am.'s Reply in Supp.*, ECF No. 37, at 2-3 (emphasis original). Second, Great American notes that Plaintiff has admitted

that he has not stated a claim for breach of contract. *Id.* Therefore, says Great American, Plaintiff's bad faith claims must fail. *Id.* This, however, distorts the elements for a bad faith claim, as constructed by Kentucky courts.

Under Kentucky law, a plaintiff may maintain a bad faith claim based upon any, or all, of these sources: a common law duty of good faith or statutory duties under either the Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110 *et seq.*) or the Unfair Claims Settlement Practices Act (Ky. Rev. Stat. Ann. § 304.12-230). *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000). Despite the distinct sources of a bad faith claim, the Supreme Court of Kentucky distilled the requirements of each type of bad faith claim into a single test. *Id.* The test consists of three elements that an insured must prove:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claims; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-47 (Ky. 1986) (Leibson, J., dissenting)). Citing the first element, the Supreme Court of Kentucky as further clarified that for a bad faith claim to proceed "the insurance company [must be] *contractually obligated* to pay." *Davidson*, 25 S.W.3d at 100 (emphasis original). In other words, "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Id.* However, recent Kentucky caselaw demonstrates that this contractual requirement does not necessitate that a plaintiff state a breach of contract claim in order to maintain a bad faith claim, contrary to Great American's argument.

Just last year, the Supreme Court of Kentucky addressed an insurance company's contention that the lower court should have, as a matter of law, dismissed the bad faith claim

against it because the company had "ultimately met its contractual obligations." *Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 31-33 (Ky. 2017). Like Great American in this case, Indiana Insurance Company argued before the Supreme Court of Kentucky that the lower court should have granted judgment in its favor as a matter law. *Id.* at 32. Also like Great American, Indiana Insurance Company reasoned that because it ultimately fulfilled the contract, the plaintiff could not maintain his bad faith claim. *Id.* But the high court of Kentucky rejected that argument.

Instead, the court in *Indiana Insurance Company* found that, under Kentucky law, "whether bad faith liability exists is predicated on the reasonableness of the insurer's conduct." *Id.* at 31 (citing *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 650 (6th Cir. 2013)). The bad faith inquiry, stated the court, "focuses on 'whether there is sufficient evidence . . . that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 32 (internal quotation marks omitted) (quoting *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000)). Finally, the Supreme Court of Kentucky addressed head-on the argument about the payment or fulfillment of the contractual obligation. "The fact that an insurer finally pays in full *does not* erase the [injury] caused by the bad faith conduct." *Id.* at 33 (internal quotation marks omitted but emphasis added) (quoting *Goodson v. American Standard Ins. Co. of Wis.*, 89 P.3d 409, 417 (Colo. 2004)).

Based upon the court's explanation in *Indiana Insurance Company*, this Court finds that a bad faith claim is not predicated upon a breach of contract claim.[4] As in *Indiana Insurance*

---

[4] As a federal court interpreting questions of state law, "the Court's task is to predict how the Kentucky Supreme Court would rule if it were deciding this question of state law." *Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*, No. 11-16-DLB-EBA, 2013 WL 4400516, at *4 (E.D. Ky. Aug. 14, 2013) (citing *Nat'l Sur. Corp. v. Harford Cas. Ins. Co.*, 493 F.3d 752, 755 (6th Cir. 2007)). Neither the cases cited by the Great American, nor the cases found by the Court, expressly

*Company*, a plaintiff may still have a viable bad faith claim where the insurer ultimately meets its contractual obligations. *See id.* at 31-33. Therefore, Great American's argument to the contrary fails.

Although a bad faith claim does not require that a plaintiff also state a breach of contract claim, the Kentucky bad faith elements clearly require a contractual obligation to state a bad faith claim. As condensed by the Kentucky high court and noted above, the first element of the three-part bad faith test directs that an "insurer must be obligated to pay the claim under the terms of the policy." *Davidson*, 25 S.W.3d 94. Simply, the first element requires that a contractual duty exist.

Based upon the Complaint and the parties' briefing, the Court finds that a contractual obligation existed between SMT and Great American. Plaintiff alleged in the Complaint that SMT took out an insurance policy issued by Great American. *Compl.*, at ¶¶ 34, 50, 80. Great American has conceded the existence the insurance policy contract, and under that contract it had a duty to pay qualifying claims. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 2-5; *See generally Exhibit*, ECF No. 92. Therefore, at the motion to dismiss phase, the Court is satisfied that the requisite contractual obligation exists for Plaintiff to continue with his bad faith claims.

In its second argument for dismissal, Great American argues that because neither SMT, nor Plaintiff (or some other agent of SMT), complied with the conditions precedent to bring a "legal action against [Great American] under [the policy]," the claims must be dismissed. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 3-4, 9-12. The insurance contract provides that "[n]o

---

addressed the question of whether a plaintiff *must* state a breach of contract claim in order to state a bad faith claim. But the cases did not support Great American's argument. Instead, the cases that analyzed issues related to the interaction between a claim for breach of contract and a claim for bad faith supported Plaintiff's contention that a breach of contract claim is not required in order to maintain a bad faith claim. *See Ind. Ins. Co.*, 527 S.W.3d at 31-33; *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375, 377-78 (Ky. 2000).

one may bring a legal action against [Great American] under this Coverage Part unless: (1) there has been full compliance with all of the terms of this Coverage Part; and (2) the action is brought within 2 years after the date on which the direct physical loss or damage occurred." *Id.* at 3-4; *Exhibit*, at 24. Further, the insurance policy provides that "in the event of loss or damage to Covered Property [an insured must] . . . [s]end us a signed, sworn proof of loss containing the information we request to investigate the claim." *Id.*; *Exhibit*, at 26. Additionally, Great American reserved the right to "examine any Insured under oath . . . about any matter relating to this insurance or claim." *Id.*; *Exhibit*, 26. Great American contends that SMT, or its agent, failed to both provide the proof of loss and submit to the examination under oath. *Id.* at 12. Upon that apparent failure, Great American argues that Plaintiff failed to comply with the terms of the policy contract, which is a condition precedent to bringing a "legal action against [Great American]." *Id.* at 9-12. However, Great American's argument and citation to the "Legal Action Against Us" provision in the insurance policy will not defeat Plaintiff's claims at this stage.

  The Court agrees with Plaintiff that, at this stage, the Complaint sufficiently states facts which could support a finding that Great American waived, or is estopped from invoking, the enforceability of conditions precedent to sue. *See Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, at 8-11. Although waiver and estoppel "are [ ] often used interchangeably," as applied to insurance contracts, such interchangeable usage "obscures their [respective] meaning[s]." *Edmondson v. Penn. Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 755 (Ky. 1989). But, Plaintiff adequately states facts that could support a finding of either waiver or estoppel with regard to Plaintiff's property loss claim, and estoppel with regard to Plaintiff's business loss claim.

  Waiver, under Kentucky law, reflects "a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract." *Id.* (citation omitted).

The essence of a finding of waiver "is the expression of an intent not to insist upon what the law affords." *Id.* And that "intention may be inferred from conduct and knowledge and may be actual or constructive, but both intent and knowledge are essential elements of waiver." *Id.*

Although the Court does not believe that Plaintiff's allegations regarding the business interruption claim rise to the level of constituting waiver, the Court finds that Plaintiff has stated sufficient facts to support a finding that Great American waived the conditions precedent for the property loss claim. Plaintiff alleges, and agrees, that Great American paid the property loss claim. *Compl.*, at ¶ 218; *Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, 7. Indeed, Great American concedes that it paid the property loss claim. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 1 n.1. Based upon Great American's intentional satisfaction of funds due for the property loss claim, the Court finds that Plaintiff has sufficiently plead facts that could supporting a finding that, by fulfilling its payment obligation, Great American waived the right to argue that SMT or its agent failed to comply with terms of the insurance policy.[5]

---

[5] Without making a clear, direct argument against waiver concerning the property loss claim, Great American cites Kentucky Revised Statutes section 304.14-280. That section provides that certain actions by an insurer "shall [not] be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer." Ky. Rev. Stat. Ann. § 304.14-280. Included among that list of actions that do not constitute waiver is "[m]aking advance or partial payments under insurance policies as an accommodation to or on behalf of any person suffering injury, loss or damage." *Id.* § 304.14-280(4). Although Great American does not directly assert that this statutory provision prevents this Court from finding waiver due to Great American's payment for the property damage claim, the Court will consider, and ultimately reject, that possible argument. The provision, on its face, refers to payments made that do not *completely* satisfy the amount due under the claim. *See Barbour v. Md. Cas. Co.*, No. 4:11-CV-00021-JHM, 2012 WL 443740, at *6 (W.D. Ky. Feb. 10, 2012) ("The Court agrees with Defendant that K.R.S. § 304.14-280 is clear that neither negotiations nor *partial* payments constitutes a waiver of a limitations provisions [sic]." (emphasis added)). In this case, however, both parties agree that no more payment is due under the obligation to pay the property loss claim. Therefore, the partial payment concerns of the Kentucky statutory provisions do not apply. Great American's satisfactory payment of the property loss claim may, if the appropriate elements are proved, establish waiver of rights.

But estoppel, unlike waiver, "gives no effect to a presumed intention, but defeats inequitable conduct." *Edmondson*, 781 S.W.2d at 755 (citation omitted). In Kentucky, "estoppel is an equitable remedy that courts often invoke to prevent a party from benefitting from its misconduct." *Hitachi Auto. Prods. USA, Inc. v. Craig*, 279 S.W.3d 123, 125-26 (Ky. 2008). To demonstrate the appropriateness of estoppel, a party must establish four elements:

> (1) acts, language, or silence amounting to a representation or concealment of material facts; (2) the facts are known to the estopped party but unknown to the other party; (3) the estopped party acts with the intention or expectation that the other party will rely on its conduct; and (4) the other party does so to its detriment.

*Id.* at 126. Applying these elements, Kentucky courts have estopped insurance companies from asserting a defense based upon an insured's failure to meet the conditions precedent of an "legal action against us" clause. *Id.* at 125; *Hobbs v. American Sec. Ins. Co.*, No. 3:08-CV-00471-TBR, 2009 WL 366325, at *3 (W.D. Ky. Feb. 13, 2009) (citing *Hitachi Auto.*, 279 S.W.3d at 125). Estoppel of a conditions precedent argument becomes appropriate when an insurance company wrongfully, or fraudulently, makes a representation or concealment that "reasonably induces inaction on the party of the plaintiff." *Id.*

Caselaw deriving from courts sitting in Kentucky, and applying its law, convince this Court that Plaintiff has sufficiently alleged facts that support his argument for estopping Great American from complaining of a failure to comply with the conditions precedent. In *Hobbs v. American Security Insurance Company*, a federal district court in the Western District of Kentucky examined a situation similar to this case. The plaintiff stated various claims, including one for bad faith arising out of the insurance company's conduct related to negotiation, settlement, and investigation of a claim. *Hobbs*, 2009 WL 366325, at *3-*4. The insurance company in *Hobbs* sought, on a motion to dismiss, dismissal of the plaintiff's claims due to the plaintiff's failure to comply with

the policy's version of the "legal action against us" provision. *Id.* at *2. The district court, however, found that Plaintiff's complaint, although "terse," sufficiently alleged facts to support an estoppel argument. *Id.* at *3-*4.

Like in *Hobbs*, Plaintiff has sufficiently alleged facts to support an argument for the application of equitable estoppel. In addition to Great American's payment of, and conduct related to, the property loss claim, which was discussed above, Plaintiff alleges a variety of other facts supporting the potential application of estoppel. Mainly contained within the lengthy paragraph 218, Plaintiff asserted that[6]:

- Great American "prevent[ed] the insured from complying with [Great American's] untimely demand of a sworn 'proof of loss' by giving conflicting explanations as to what was required of the insured with respect to the submission of such a 'proof of loss' [and] by repeatedly requesting supporting information that had already been submitted by [the] insured, or requesting other, irrelevant information, after advising the insured that [Great American] had all the information [it] needed for the [business interruption] claim;"

- Great American made one payment for $100,000 in late November of 2015 on the business interruption claim, but refused to make further payments;

- Great American, after it refused to make further payments on the business interruption claim, attempted to "negotiate a limited 'global settlement' on the [business interruption] claim of $250,000, even though the it knew the business loss was at least $750,000;

---

[6] The following assertions do not reflect the entirety of Plaintiff's allegations that could support a finding of waiver or estoppel. But the Court has extracted these as a demonstration of the sufficiency of Plaintiff's Complaint in stating facts supportive of estoppel.

- Great American "failed to proceed within a reasonable time with 'sworn statements under oath' of [the insured or its agents], which were not even requested until more than six months after the Ivel line break;"

- Great American delayed payment on the business interruption claim for six months, then made the one $100,000 payment, then three months after that payment, on February 4, 2016, Great American said that "it still lacked 'documentation' to support the [business interruption claim]," even though it had already made partial payment on the claim;

- Great American repeatedly requested information that it had previously requested and received from the insured or its agents;

- Great American made "false claims of 'fraud' against [Mr.] Johnson to keep him from pursuing the [business interruption] claim;"

- Great American delayed the investigation in to the claim by, for example, delaying the hiring of "MDD Accounting Firm" to review the business interruption claim for over four months;

- Great American attempted to dissuade Mr. Johnson "from hiring a lawyer, by threatening that an attorney [ ] would prolong and slow down the process of the payment;" and

- Great American "misrepresent[ed] 'lowballing' the nature of the claim by use of their [sic] MDD Spreadsheet, and advising they [sic] were trying to pay 'all they could justify on [the] claim,' but that if [Mr.] Johnson pressed for full value of the policy[,] upper management 'may resist and fight the claim.'"

*Compl.* at ¶ 218. This sampling of Plaintiff's allegations demonstrates factual fodder with which, if proven, Plaintiff may succeed in establishing the appropriateness of estoppel in this case.

Specifically, the Court notes the first and the last bullet-pointed allegations. In the first noted allegation, Plaintiff provides support for how it was that Great American prevented SMT from complying with the "proof of loss" submission. In the last, as quoted above, Plaintiff detailed a representation made by Great American agents that, reading it under the standard on a motion to dismiss, indicates an intent to "induce inaction on the part of the plaintiff." *See Hitachi Auto*, 279 S.W.3d at 125. Even absent the plethora of other allegations made by Plaintiff that could permit an estoppel argument to continue at this point, the Court believes that the first and last allegations noted state sufficient facts to support Plaintiff's estoppel argument. Therefore, Great American's argument premised upon the failure of SMT or its agent to comply with the conditions precedent fails.[7]

As laid out earlier in this Memorandum Opinion and Order, Great American employs this failing argument in two ways. First, it contends that dismissal is appropriate because Plaintiff cannot sue under the policy without satisfying all the terms, given the "legal action against us" provision. *Great Am.'s Mem. in Supp. of Mot. to Dismiss*, at 9-12. Second, Great American asserts that Plaintiff's failure to comply with the conditions precedent "negates coverage under the Policy." *Id.* at 13-14. However, because of this Count's finding that Plaintiff has sufficiently alleged facts that would support the application of waiver, or estoppel, to Great American's conditions precedent argument, both of Great American's arguments miss the mark.

---

[7] Finding Plaintiff has sufficiently plead facts to support an application of equitable estoppel, the Court will not address Plaintiff's "substantial compliance" argument at this time. *See Pl.'s Resp. to Great Am.'s Mot. to Dismiss*, 10-11; *Great Am.'s Reply in Supp.*, at 10-11.

Despite the Court's finding regarding the Complaint's sufficiently stated facts underlying a potential application of estoppel, Plaintiff will still have to prove the necessary facts to support a final finding on either waiver, estoppel, or both, after discovery has taken place. However, the examination of Plaintiff's supporting evidence must be conducted at a later stage in the litigation. *See Hobbs*, 2009 WL 366325, at *4 ("Nonetheless, Defendant's limitations defense goes to the merits of Plaintiff's estoppel claim and is an argument best reserved for a motion for summary judgment.").

As explained above, the Court does not agree with Great American's arguments for dismissal of Plaintiff's claims. Plaintiff's claims against Great American will proceed.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:     July 24, 2018

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE