## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

THOMAS H. FLUHARTY,
Trustee of the Chapter 11 Bankruptcy Estates of
Dennis Ray Johnson, II (No. 3:16-BK-30227);
DJWV2, LLC (No. 3:16-BK-30062);
Southern Marine Services, LLC (No. 3:16-BK-30063);
Southern Marine Terminal, LLC (No. 3:17-BK-30064);
Redbud Dock, LLC (No. 3:16-BK-30398);
Green Coal, LLC (No. 3:16-BK-30399);
Appalachian Mining & Reclamation, LLC (No. 3:16-BK-30400)
Producer's Land, LLC (3:16-BK-30401);
Producer's Coal, Inc. (3:16-BK-30402);
Joint Venture Development, LLC (No. 3:16-BK-30403),

               Plaintiffs,

v.                          CIVIL ACTION NO.   3:17-4220

PEOPLES BANK, NA,
PEOPLES INSURANCE AGENCY, LLC, and
GREAT AMERICAN INSURANCE COMPANY OF NEW YORK.

               Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Peoples Bank, N.A.'s ("Peoples Bank") Motion to

Dismiss. ECF No. 27. Plaintiff, acting as trustee for a group of business debtors ("Coal Group"),

alleges claims against Peoples Bank under fifteen causes of action: (1) breach of a fiduciary duty;

(2) fraud in the inducement of a forbearance agreement; (3) violation of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"); (4) RICO conspiracy; (5) fraud; (6) physical assault; (7)

fraudulent conveyance; (8) tortious interference with a business relationship; (9) conversion; (10)

bad faith; (11) negligence; (12) void collateral assignment of membership interest; (13) contempt;

(14) liability for indemnification and obligation; and (15) punitive damages. *Compl.*, ECF No. 1,

at ¶¶ 107–231, 234–241.

In its motion to dismiss, Peoples Bank argues that all fifteen of Plaintiff's claims against it should be dismissed. *Mot. to Dismiss*, at 2. While Peoples Bank sets forth various sub-arguments that require this Court to dismiss all claims against it, its two broad arguments for dismissal are as follows: (1) this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine, and therefore the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1); and (2) each count of the complaint fails to state a claim upon which relief may be granted, and therefore all claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*; *Mem. in Supp. of Mot. to Dismiss*, ECF No. 28, at 7–30.

The parties have fully briefed the issues and the motion is now ripe for adjudication. As explained below, the Court **GRANTS, IN PART, AND DENIES, IN PART** Defendant's Motion to Dismiss.

## I.  BACKGROUND

As stated in previous orders addressing other motions to dismiss filed in this case, the factual background of this case is lengthy and complex. Thus, while the Court will not detail the complete factual development that led to the claims currently before it in this order,[1] the Court will provide a summary of the facts that are relevant to Peoples Bank's Motion to Dismiss.

### A. The Loans

From September 2011 to May 2014, Peoples Bank made five loans to the Coal Group,[2] totaling over $19,000,000. *Compl.*, at ¶¶ 26–31. The loans were secured by inventory and accounts

---

[1] For a brief overview of the facts of this case, review the orders already issued by this Court. *See Fluharty v. Peoples Bank, NA ("April Order")*, No. 3:17-4220, 2018 WL 1954829, at *1 (S.D.W. Va. Apr. 24, 2018); *Fluharty v. Peoples Bank, NA ("June Order")*, No. 3:17-4220, 2018 WL 3097329, at *1–*2 (S.D.W. Va. June 22, 2018); *Fluharty v. Peoples Bank, NA ("July Order")*, No. 3:17-4220, 2018 WL 3552340, at *1 (S.D.W. Va. July 24, 2018).
[2] One of the debtors for whom Plaintiff serves as trustee, Dennis Ray Johnson ("Johnson"), owns all or a substantial portion of the other Coal Group entities. *Compl.*, at ¶ 1.

receivable (the "borrowing base"). *Id*. at ¶ 36. Peoples Bank's relationship with the Coal Group was managed by an employee of Peoples Bank, Robert Von Nostrand ("Von Nostrand"). *Id*. at ¶¶ 24–26.

**B. The Default**

In the third quarter of 2014, Van Nostrand became concerned about the quality of the coal that constituted the borrowing base of the Coal Group, because it was tested and determined to be of lower quality than expected. *Id*. at ¶¶ 36–39. A business partner of Johnson, Mark Pinson ("Pinson"), misrepresented the quality of the coal inventory to the Coal Group and Peoples Bank, and provided false explanations for the quality issue when it was detected. *Id*. at ¶¶ 38–39. In February of 2015, Johnson, on behalf of the Coal Group, and Peoples Bank met to discuss the low coal quality. *Id*. at ¶ 40. At the meeting, Van Nostrand informed Johnson that based on the lower than expected coal quality and thus lowered borrowing base, Peoples Bank viewed the Coal Group as "essentially insolvent." *Id*. After the meeting, Von Nostrand began to suspect something was wrong in the Coal Group's operations and systems leading to the disparities in coal quality. *Id*. at ¶ 41. The actual root of his concerns were the acts underlying Pinson's nondisclosures, misrepresentations, and scheme to defraud. *Id*. On March 18, 2015, Peoples Bank notified the Coal Group that concerns with the borrowing base and other matters constituted Events of Default under the Loans. *Id*. at ¶ 45. However, Peoples Bank did not exercise its rights and remedies at that time but reserved the right to do so later. *Id*. On that same date, at Peoples Bank's insistence, Johnson pledged security interests in additional coal leasehold interests owned by the Coal Group and a "non-plaintiff Johnson company, Producers Land – WV, LLC," to alleviate the defaults. *Id*. at ¶ 46.

3

### C. The Restructuring Plan

Peoples Bank undertook discussions with Johnson and related Coal Group components to resolve the lack of adequate collateral. *Id*. at ¶ 42. The Bank—through Von Nostrand—and Johnson began to discuss restructuring the Loans into new, ten-year loans secured exclusively by fixed assets, as opposed to the inventory of coal. *Id*. One key element to moving forward with the restructuring plan required obtaining new appraisals of certain Coal Group assets, such as the Stonecoal Mine, Ivel Prep Plant, and Logan Mine, to determine whether they had sufficient value to support the restructuring plan. *Id*. at ¶¶ 43–44. Another key element to moving forward with the plan involved assessing the viability of the Coal Group's sales of coal from the Ivel Prep Plant. *Id*. at ¶ 42.

Around this same time, Johnson alternatively sought to satisfy the outstanding indebtedness to Peoples Bank by negotiating a potential sale of the Coal Group to an Australian company, Guildford Coal Limited ("Guildford"). *Id* at ¶ 53. Peoples Bank was aware of and supported Johnson's efforts to sell the Coal Group assets to Guildford. *Id*. Preliminary documents were executed by mid-May of 2015, and a letter of intent was signed by Guilford, Johnson, and Pinson by June 3, 2015. *Id*.

On May 18, 2015, a major incident occurred when a coal beltline broke at the Ivel coal wash plant, which was leased by the Coal Group and owned by Prater Creek Coal Corp. ("Prater Creek"). *Id*. at ¶¶ 43, 48. The Coal Group reported an insurance claim to its insurer Great American Insurance Company of New York ("GAI"), and GAI advanced funds to the Coal Group of $500,000. *Id*. at ¶¶ 50, 80. The funds were deposited into an account held by the Coal Group, however, the Coal Group believed the account to be a joint account requiring signatures of both Johnson and Prater Creek's John Harris. *Id*. at ¶ 80.

### D. Receipt of Appraisals and the Forbearance Agreement

At this point, the Coal Group continued to be in default of the Loans. On June 18 and 19, 2015, Peoples Bank indicated to Johnson that its counsel contemplated drafting an agreement by June 26, on a 45-day short term basis, to work through some default issues before going into any long-term agreement. *Id*. at ¶ 58. Peoples Bank then received the appraisal results on June 19 and 23. *Id*. at ¶ 57. As stated above, the appraisal results were essential in determining whether the Coal Group's fixed assets had enough value to support the restructuring plan. *Id*. at ¶¶ 43–44. On June 26, Peoples Bank informed Johnson that it had *received* the appraisal results but withheld the findings from Johnson and the Coal Group until July 2015. *Id*. at ¶¶ 57, 60. At the time, the Coal Group contemplated that, if an agreement with Guildford was made, $20 million would be the purchase price, and this fact was known by Peoples Bank. *Id*. at ¶ 60. However, on June 26, in response to a text message from Johnson requesting the appraisal results, Peoples Bank wrote: "I believe the numbers we have are lower than what Guildford values might be so we don't want them to use it to come back at you." *Id*. Peoples Bank made this statement even though the appraisals totaled as much as $69 million. *Id*.

Four days later, on June 30, 2015, the Bank and Johnson executed a Forbearance Agreement ("FA"). *Id*. at ¶ 61. Johnson executed the FA on behalf of himself, the Coal Group, and certain other entities not part of this case. *Id*. The FA differed materially from the short term 45-day temporary agreement previously represented by Peoples Bank, which was supposed to include a provision for "mutual extensions." *Id*. However, Johnson believed that he and the Coal Group had no financial option at that time other than to sign the FA. *Id*. Under the terms of the FA Peoples Bank agreed to forbear from exercising its default rights for a period of six months, on the condition that by November 15, 2015, the Coal Group have either a fully executed commitment of

sale of all assets, or a refinancing of all of the applicable Peoples Bank debt with the Coal Group, with such asset sale or refinancing to close by December 31, 2015. *Id*. On October 23, Peoples Bank declared a default of the FA due to, among other things, the Coal Group's failure to meet the deadlines for a sale or refinancing. *Id*. at ¶ 72.

### E. The State-Court Proceedings

Peoples Bank then filed an action in November of 2015 against the Coal Group in Cabell County, West Virginia seeking to collect on the five defaulted loans. *Id*. at ⁋ 79. On the same day, Peoples Bank removed, or "swept," the previously mentioned $500,000 GAI insurance deposit from the Coal Group's account, and then paid the $500,000 to Prater Creek in March of 2016. *Id*. at ¶¶ 82, 88.

On April 29, 2016, in the state-court action, an evidentiary hearing was held on Peoples Bank's motion to appoint David G. Zatezalo as receiver over the Coal Group. *Id*. at ¶ 93. At the close of that hearing, the court ruled from the bench that the motion was granted, with an order to follow. *Id*. at ¶ 95. The order, entered May 18, 2016, stated that the appointment was made pursuant to "certain provisions of the West Virginia Code" and pursuant to "the Forbearance Agreement" of June 30, 2015. *Id*. In August of 2016 the state court named Zachary B. Burkons ("Burkons") as a replacement receiver. *Id*. at ¶ 103.

Finally, on January 3, 2017, in the civil action pending before this Court styled as *Peoples Bank v. Producers Land-WV, LLC* (Civ. Action No. 2:16-cv-09874), this Court granted a motion from Peoples Bank and appointed Thomas H. Fluharty as federal receiver over Procedures Land-WV, LLC. *Id*. at ¶ 106. Mr. Fluharty is the same individual filing the instant action in his capacity of Chapter 11 Trustee for the various plaintiff bankruptcy estates. *Id*.

## II.  STANDARD OF REVIEW

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can follow two tracks. Under the first track, a party asserts a "factual attack," claiming that the jurisdictional allegations made in the complaint are inaccurate. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under the second track, a party asserts a "facial attack," claiming that the jurisdictional facts contained within the complaint, taken as true, fail to support a court's subject matter jurisdiction over the action. *See id.*; *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986). When considering a "facial attack," a court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (internal quotation marks and citation omitted). Peoples Bank has asserted a facial attack, and therefore the Court will proceed under the Rule 12(b)(6) procedural framework.

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true—even when doubtful—the allegations "must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Finally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor …." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal quotations omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)).

## III.  DISCUSSION

### A. Peoples Bank's Motion to Dismiss for Lack of Subject Matter Jurisdiction

First, Peoples Bank argues that this Court lacks subject matter jurisdiction to adjudicate this dispute because of the "*Rooker–Feldman*" doctrine. *Mem. in Supp. of Mot. to Dismiss*, at 7. However, Peoples Bank reaches its conclusion based on an outdated understanding of the law.

The *Rooker–Feldman* doctrine is "a jurisdictional rule providing that lower federal courts generally cannot review state court decisions." *Holliday Amusement Co. of Charleston v. South Carolina*, 401 F.3d 534, 537 (4th Cir. 2005). Unfortunately, in the past the *Rooker–Feldman* doctrine was the source of confusion, as the Fourth Circuit admitted that in *previous* cases the doctrine was "interpreted *broadly* to provide that the loser in a state-court adjudication was barred from bringing suit in federal court alleging the same claim or a claim that could have been brought

in the state proceedings." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (emphasis added). In 2005, the United States Supreme Court confirmed that this broad interpretation of the doctrine essentially turned a preclusion question into a jurisdictional question, when it stated that "the doctrine has sometimes been construed [by the lower courts] to extend far beyond the contours of the *Rooker* and *Feldman* cases … superseding the ordinary application of preclusion law…." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005).

The Supreme Court then clarified that the doctrine is confined to cases where—first—a state-court judgment was rendered *before* the federal proceedings commenced, and—second—the plaintiff is complaining of injuries *caused* by the state-court *judgment*. *See id.* at 283. Thus, once it is established that a state-court judgment was rendered before the federal proceeding was initiated, the key inquiry is whether the plaintiff is merely attempting a second bite at the apple in the district court—a preclusion issue—or the plaintiff is essentially seeking appellate review by the district court by claiming that the state-court judgment *itself* harmed him or her—a *Rooker–Feldman* issue. *See id.* at 291–92.

While the Supreme Court has clarified that the *Rooker–Feldman* doctrine applies only when plaintiffs are seeking review and rejection of a state-court's judgment, when this situation does occur, plaintiffs cannot attempt to avoid the doctrine merely by making novel arguments or presenting new claims to the district court. *See Davani*, 434 F.3d at 717 (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)). Instead, the Supreme Court held that "[i]f the constitutional claims presented to [the district court] are *inextricably intertwined* with the state court's [ruling] in a judicial proceeding … then the district court is in essence being called upon to review the state-court decision." *Id.* (quoting *Feldman*, 460 U.S. at 482). The Fourth Circuit has made clear that this "inextricably intertwined" language "does not create an additional

9

legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion …." *Id*. at 719. The conclusion is simply that a "claim, whether or not raised in state court, that *asserts injury based on a state judgment and seeks review and reversal of that judgment* … is 'inextricably intertwined' with the state judgment." *Id*. (quoting *Hoblock v. Albany County Bd. of Elections*, 442 F.3d 77, 86–87 (2d Cir. 2005)) (emphasis added).

In support of its position that this Court lacks subject matter jurisdiction, Peoples Bank states that the "filing of this Complaint is an attempt [by the Coal Group] to circumvent Judge Tabit's Orders which found the FA to be valid," and that the Coal Group "did in fact raise the issues and arguments that [it] now asserts in this federal lawsuit." *Mem. in Supp. of Mot. to Dismiss*, at 8. It is clear from these statements that Peoples Bank is incorrectly basing its arguments on the Fourth Circuit's previous and improperly broad interpretation of the *Rooker–Feldman* doctrine. Whether or not the Coal Group raised the issues currently in front of this Court previously with the state court is irrelevant under the *Rooker–Feldman* analysis. As the Supreme Court made clear in *Exxon*, that determination raises a preclusion issue, not a subject matter jurisdiction issue. Under the *Rooker–Feldman* doctrine, this Court must only ask whether the Coal Group is complaining of injuries *caused* by the state-court *judgment*—thus requesting this Court to overturn the state-court decision.

A classic example of a plaintiff complaining of injuries caused by a state-court judgment occurred in one of the two origin cases of the *Rooker–Feldman* doctrine, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Feldman*, the Supreme Court held that the plaintiffs could not bring a suit in federal district court *against* the District of Columbia Court of Appeals alleging that the *court's denial* of their petitions violated the federal constitution, as this action was seeking appellate review of the District of Columbia Court's ruling. *See Davani*, 434

F.3d at 716 (citing *Feldman*, 460 U.S. at 468, 480–82). Peoples Bank fails to point to any claim in this case that parallels the claim in *Feldman*, because such a claim does not exist. The Coal Group is not asserting any claim *against* the lower state court, and it is not complaining of any injuries *caused* by the state-court judgment. To the contrary, all the Coal Group's claims are complaining of injuries caused by Peoples Bank or its agents.

Peoples Bank also takes the position that the "inextricably intertwined" language from *Feldman* creates a separate test that requires this Court to dismiss the complaint. Peoples Bank argues that "[a]lmost all of the factual and legal issues raised by Plaintiff in this action were raised by Debtors during the hearing before Judge Tabit and thus, were inextricably intertwined with her decision." *Mem. in Supp. of Mot. to Dismiss*, at 8. As stated earlier, this "inextricably intertwined" language does not create a different test but is instead a conclusion that is reached when a plaintiff is seeking redress for an injury caused by the state court *but also presenting a novel argument to the district court*. To invoke *Rooker–Feldman* the plaintiff must still "assert[] injury based on a state judgment and seek[] review and reversal of that judgment." Because Peoples Bank cannot point to a single claim where the Coal Group is seeking redress for an injury caused by the state-court judgment, the "inextricably intertwined" language does nothing for its position.

Peoples Bank also tries to persuade this Court that its broad interpretation of the *Rooker–Feldman* doctrine is correct, by arguing that the Supreme Court's holding in *Exxon* that emphasized the narrowness of the *Rooker–Feldman* doctrine is not applicable to this case. Peoples Bank claims that *Exxon* involved a case where the federal action was filed *before* the state-court proceedings *ended*, and its holding was limited only to those situations. *Reply Mem. in Supp. of Mot. to Dismiss*, ECF No. 42, at 3–4. Peoples Bank's position is without merit. While it is true that in *Exxon* the federal action was initiated prior to the state-court judgment, and *Exxon* clearly held

11

that the *Rooker–Feldman* doctrine is never applicable in these circumstances, *Exxon's* holding was not *limited* to these circumstances. Rather, the Supreme Court held that "[t]he *Rooker–Feldman* doctrine … is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused* by state-court judgments rendered *before* the district court proceedings commenced and inviting district court *review and rejection* of those judgments." *Exxon*, 544 U.S. at 281 (emphasis added). Additionally, the Supreme Court specifically held that "§ 1257 [also does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter *previously* litigated in state court." *Id.* at 282 (emphasis added). Therefore, Peoples Bank's interpretation of the *Rooker–Feldman* doctrine is incorrect, and the Court denies its motion to dismiss for lack of subject matter jurisdiction.

**B. Peoples Bank's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted**

Peoples Bank argues in various sections why specific counts must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *Mem. in Supp. of Mot. to Dismiss*, at 9–30. The Court will address each section in turn.

**1. Collateral Estoppel**

First, Peoples Bank argues that the doctrine of collateral estoppel bars this Court from examining the "validity and enforceability of the FA" as well as the appointment of receivership and other related matters already examined by the state court. *Mem. in Supp. of Mot. to Dismiss*, at 9. Because of the current stage of the proceedings, the Court disagrees.

When considering a motion to dismiss under 12(b)(6) a court generally cannot accept materials regarding matters outside of the pleadings. If, when ruling on a motion to dismiss under 12(b)(6), matters outside the pleadings are "*not excluded* by the court, the motion shall be treated

as one for *summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 995 (4th Cir. 1997) (citing Fed. R. Civ. P. 12(d)) (emphasis added). However, "a motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court. If the district court chooses to ignore the supplementary materials and determines the motion under the Rule 12(b)(6) standard, no conversion occurs." *Id.* at 996 (quoting *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 18–19 (1st Cir. 1992)).

Peoples Bank asserts that "Judge Tabit squarely decided the validity of the FA, and grounds for appointment of a receiver to oversee the Debtors, after hearing lengthy testimony from Johnson about the issues raised in the action before this Court." *Mem. in Supp. of Mot. to Dismiss*, at 9. To provide support for these conclusions, Peoples Bank cites three separate exhibits attached to its memorandum. *Id.*  If this Court were to consider these exhibits—which are "matters outside the pleadings"—Peoples Bank's motion would be transformed into a Rule 56 motion for summary judgment. The Court elects not to transform Peoples Bank's motion to dismiss into a motion for summary judgment, and therefore chooses "to ignore the supplementary materials," and only consider the arguments that refer to the pleadings.[3] Because Peoples Bank has not made a single argument that the pleadings suggest collateral estoppel bars this Court from considering any issue in this case, Peoples Bank's collateral estoppel argument is rejected.

---

[3] While the Court does consider one of these exhibits in section 11 pursuant to the *Trigon* exception, the Court finds *Trigon* inapplicable to this issue, and therefore exercises its discretion not to apply it here. *See Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (holding that "when a defendant attaches a document to its motion to dismiss, [under certain circumstances] a court *may* consider it in determining whether to dismiss the complaint ….") (internal quotations omitted) (emphasis added).

### 2. Forbearance Agreement Release of Claims

Peoples Bank argues that "because the FA is valid and enforceable (under both *Rooker–Feldman* and collateral estoppel), the Release contained in the FA is also valid and enforceable and eliminates the vast majority of Plaintiff's claims." *Mem. in Supp. of Mot. to Dismiss*, at 10. To reach the conclusion that the FA is enforceable, Peoples Bank again cites to exhibits attached to its memorandum. *Id*. For the same reasons stated above in section (B)(1), this Court will not consider matters outside of the pleadings. Additionally, whether the language of the FA—which the Coal Group attached to its complaint—eliminates the Coal Group's claims is not the only question at this stage of the proceedings when the Coal Group *disputes the validity* of the FA. The question we must also ask is whether the complaint asserts facts that make it plausible the FA is invalid—the issue we turn to next.

### 3. Fraud in the Inducement of the Forbearance Agreement

Peoples Bank asserts that the Coal Group's claim for fraud fails because the complaint fails to adequately plead *any* of the elements of fraud. *Mem. in Supp. of Mot. to Dismiss*, at 10. The Court disagrees.

In West Virginia the essential elements in an action for fraud are as follows: (1) the act claimed to be fraudulent was the act of the defendant or induced by him; (2) it was material and false; (3) plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) plaintiff was damaged because he relied upon it. *Cordial v. Ernst & Young*, 483 S.E.2d 248, 259 (W. Va. 1996). Both "the Supreme Court of Appeals of West Virginia and the Fourth Circuit have characterized the burden of proving fraud as 'unquestionably heavy.'" *Rowe v. Aurora Commercial Corp.*, No. 5:13–21369, 2014 WL 3810786, at *12 (S.D.W. Va. Aug. 1, 2014) (quoting *Elk Ref. Co. v. Daniel*, 199 F.2d 479, 482 (4th Cir. 1952)). Additionally, under Rule 9 of

the Federal Rules of Civil Procedure, fraud must be "state[d] with particularity." Fed. R. Civ. P 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotations omitted).

Finally, "an actionable representation cannot consist of … unfulfilled predictions or expectations, or erroneous conjectures as to future events …." *Janssen v. Carolina Lumber Co.*, 73 S.E.2d 12, 17 (W. Va. 1952). Instead, "the representation required … must *ordinarily* relate to a past or existing fact …." *Id*. (emphasis added). *However*, "an expression of intention or opinion *may* serve as the predicate of fraud if "the party claiming fraud shows the non-existence of the intention to fulfill the promise or predicted act at the time the promise or predicted act was made." *Croston v. Emax Oil Co.*, 164 S.E.2d 728, 732 (W. Va. 1995).

### a. The "Material and False" Requirement

In its complaint, the Coal Group alleges that multiple acts by Peoples Bank were fraudulent. Specifically, the Coal Group asserts that Peoples Bank "affirmative[ly] misrepresent[ed] … the Appraisal value" based on the following facts: (1) Peoples Bank knew that the Coal Group contemplated that, if an agreement with Guildford was made, $20 million would be the purchase price; (2) however, on June 26, in response to a text message from Johnson requesting the appraisal results, Peoples Bank wrote that "I believe the numbers we have are lower than what Guildford values might be so we don't want them to use it to come back at you"; and (3) Peoples Bank made this statement even though the appraisals totaled as much as $69 million. *Compl*., at ¶¶ 60, 117.

15

Peoples Bank argues that these facts cannot be enough to state a claim for misrepresentation under *Janssen*, because Peoples Bank merely "cautioned Johnson that its appraisals *might* be lower than Guildford's," and that representation is merely "conjecture regarding what the Bank's appraisals might reflect in comparisons to Guildford's." *Mem. in Supp. of Mot. to Dismiss*, at 12 (emphasis in original). However, Peoples Bank ignores the nuance in the Coal Group's claim. While it is true that Peoples Bank technically only provided Johnson with an opinion and prediction, the Coal Group is *not* alleging that Peoples Bank committed fraud because it was incorrect in its belief and prediction. Rather, the Coal Group is arguing that Peoples Bank did not *actually* believe the opinion and prediction that it asserted, an action that the Court in *Croston* makes clear is fraudulent conduct. While it is certainly possible Peoples Bank was genuine in its prediction and opinion, that is an issue of fact. By stating in the complaint that Peoples Bank knew that if an agreement with Guildford was made $20 million would be the purchase price, and Peoples Bank stated it "believe[d]" the appraisal numbers it had were lower than Guildford's values even though the appraisals totaled as much as $69 million, it can be reasonably inferred that Peoples Bank made an *intentionally* false statement of an opinion.

Peoples Bank also argues that "there is nothing in [the] Complaint to indicate that the Bank's conjecture regarding the appraisals in this case was indeed false," because "nowhere does Plaintiff allege that Guildford's values (i.e., valuation of the assets) in fact reflected lower valuations than the Bank's appraisals." *Mem. in Supp. of Mot. to Dismiss*, at 12. Essentially, Peoples Bank is taking the position that there can be no fraud if it intended to lie about an opinion that turned out to be true. While the premise of this argument may be valid, because of the large difference between the appraisal value and the expected purchase price, it can be reasonably *inferred* that Peoples Bank's statement was in fact false, and Guildford's appraisal values were not

higher than Peoples Bank's. Whether or not this is in fact true is not a decision the Court must make at this stage of the proceedings. Therefore, the Coal Group states sufficient facts in its complaint that make it plausible Peoples Bank committed a fraudulent act that was both material and false.

### b. The Reasonable Reliance Requirement

In its complaint, the Coal Group alleges that four days after Peoples Bank misrepresented its appraisal values, "a Forbearance Agreement required by the Bank was signed by the [Coal Group]." *Compl*., at ¶¶ 61, 66. Additionally, the complaint states that "despite its patently onerous terms, Johnson believed that he and the [Coal Group] … had no financial options to signing the agreement" and "the Bank … represent[ed] to him that he would have to sign the forbearance agreement in order to obtain further re-financing by the Bank …." *Id*. The complaint also states that the Coal Group "would not have executed the … Forbearance Agreement had Peoples Bank disclosed the appraisals prior to such agreement because the asset values would have supported refinancing elsewhere" and "[t]ruthful disclosure would have caused Johnson and the Coal Group to know that adequate collateral for restructuring was available." *Id*.

Peoples Bank argues that the Coal Group does not allege it justifiably relied on the misrepresentation of the appraisals because "the FA did not in any way prevent or deter the Debtors from obtaining alternative refinancing. To the contrary, the FA specifically called for the Debtors to seek and obtain alternative refinancing, or to sell their assets." *Mem. in Supp. of Mot. to Dismiss*, at 16. However, this argument does not address the issue that the appraisal misrepresentation caused the Coal Group to believe it had no other financial options, and that Peoples Bank represented to Johnson, whether truthful or not, "that he had to sign the FA to obtain the work-out plan refinancing" with Peoples Bank. *See Mem. in Opp. to Def.'s Mot. to Dismiss*, ECF No. 34, at

19. It is crucial to remember that because a 12(b)(6) motion has been filed, this Court is not asking whether the Coal Group *actually* relied on Peoples Bank's alleged misrepresentation, or whether its reliance was *actually* reasonable. Instead, the Court is merely deciding whether the Coal Group states enough facts in its complaint that allows this Court to draw the *reasonable inference* that it relied on Peoples Bank's alleged misrepresentation and that this reliance was reasonable. Given that the Coal Group states directly in its complaint that it believed it had no other financial options available because of Peoples Bank's appraisal misrepresentation, and that it believed it would have to sign the FA to obtain further re-financing by Peoples Bank, a reasonable inference can certainly be drawn that the Coal Group signed the FA in reasonable reliance on the appraisal misrepresentation.

Peoples Bank also takes the position that the Coal Group "expressly disclaimed any detrimental reliance in the FA." *Mem. in Supp. of Mot. to Dismiss*, at 17. However, this Court will not examine the terms of a contract that limit fraud liability when the validity of that contract is the subject of the dispute. *See Traders Bank v. Dils*, 704 S.E.2d 691, 696 (W. Va. 2010) (holding that fraud is "recognized to be an exception to the contractual language … which seeks to limit one party's liability to the other."). Therefore, the Coal Group sufficiently alleges that it justifiably relied on Peoples Bank's misrepresentation of the appraisals.

### c. The Damages Requirement

In its complaint, the Coal Group alleges that "entry of the Forbearance Agreement was to the detriment of Johnson and the Coal Group, who suffered significant financial loss, including through its/their business having been destroyed and Johnson's reputation having been irreparably damaged, through entering into the Forbearance Agreement …." *Compl*., at ¶ 119. However, Peoples Bank argues that the Coal Group cannot show "*how* the FA destroyed its business," as

forbearance agreements typically only provide a benefit to debtors. *See Reply Mem. in Supp. of Mot. to Dismiss*, ECF No. 41, at 6 (emphasis in original).

The Coal Group has pled sufficient facts that make it plausible it was damaged because of its reliance on Peoples Bank's misrepresentation. As stated above, the appraisal misrepresentation caused the Coal Group to believe it had no other financial options, and Peoples Bank represented to Johnson, whether truthful or not, that he *had* to sign the FA to obtain the work-out plan refinancing. Because of the appraisal misrepresentation, the Coal Group did not believe it had *any other* alternatives but to sign the FA and seek refinancing with Peoples Bank. It can be inferred that if the Coal Group was told of the correct appraisal value, it would have known that it could have sought refinancing elsewhere and therefore would not have signed the FA. It can also be inferred that if the Coal Group sought refinancing elsewhere, instead of relying on the appraisal value—and thus the FA and viewing Peoples Bank as its only possible method of refinancing—it would not be in the financial position it is in today. Thus, the Coal Group states sufficient facts in its complaint that make it plausible it was damaged because of its reliance on Peoples Bank's misrepresentation, and thus the FA. As a result, the Court denies Peoples Bank's motion to dismiss the Coal Group's claim for fraud in the inducement of the FA.

### 4. Breach of Fiduciary Duty

Peoples Bank argues that the Coal Group's claim for breach of a fiduciary duty fails because the complaint does not allege facts that establish a duty, breach, or damages. *Mem. in Supp. of Mot. to Dismiss*, at 18–20. Based on the facts asserted in the complaint, the Court disagrees.

Although "the law does not *generally* recognize a fiduciary relation between creditor and debtor," a fiduciary relationship can exist when the "lender has created a *special relationship* by

performing extraordinary services." *Knapp v. American General Finance Inc.*, 111 F. Supp. 2d 758, 776 (S.D.W. Va. 2000) (emphasis added); *McFarland v. Wells Fargo Bank, N.A.*, 19 F. Supp. 3d. 663, 675 (S.D.W. Va. 2014) (emphasis added); *see also Glascock v. City Nat. Bank of West Virginia*, 576 S.E.2d 540, 545 (W. Va. 2002) (holding that a special relationship existed when the facts showed the bank was "significantly involved" in the subject at issue). When determining whether a "special relationship" exists, a court must consider "the extent to which the particular plaintiff is affected differently from society in general," and the special relationship may be evident based on the following:

> [T]he defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

*Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 272 (W. Va. 2001) (quoting *Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000)).

Peoples Bank first takes the position that "[c]ourts in this state very rarely" find that a special relationship—and thus a fiduciary duty—exists between a lender and a borrower, and even when courts do find a special relationship exists, that finding only occurs "under truly extraordinary circumstances which are not alleged here." *Mem. in Supp. of Mot. to Dismiss*, at 19. While this Court does not dispute that courts in West Virginia may be hesitant to find a special relationship between a lender and a buyer, a motion to dismiss has been filed here, and thus it is not necessary for this Court to find that a special relationship does in fact exist. Rather, based on the standard set forth in *Iqbal*, this Court believes that the Coal Group states sufficient facts that make it *plausible* a special relationship between it and Peoples Bank existed. For example, the

complaint alleges that aside from being an ordinary lender, Peoples Bank provided "ancillary services" including "procuring and placement of insurance through its ancillary related insurance company," and it had "close involvement" in "business operations," including "decision making on coal operations of mining, producing, sales, and shipping of coal." *Compl.*, at ¶ 109. It can certainly be argued that these facts show Peoples Bank performed "extraordinary" services or were "significantly involved" in the Coal Group's business operations. Additionally, the facts in this case are very similar to *Glascock*, where the West Virginia Supreme Court held that a special relationship between a lender and borrower existed. *See Glascock*, 576 S.E.2d at 545. In *Glascock*, the bank—which loaned the plaintiff money to construct a new home—independently hired an inspector to determine if there were any issues with the property. *Id.* at 542–43. The inspector found numerous problems in the construction, but the bank never provided the plaintiff with a copy of the report or revealed the report's contents to him. *Id.* at 543. The Supreme Court therefore held that the bank was in a "special relationship" with the plaintiff because the bank "possessed information of no interest to society in general but of great interest to the plaintiff," and it was foreseeable to the bank that "withholding the information from the [plaintiff] could cause the [plaintiff] harm." *Id.* at 545 (internal quotations omitted). Here, like in *Glascock*, Peoples Bank "possessed information of no interest to society in general but of great interest" to the Coal Group: the actual appraisal value of its assets. Additionally, it was foreseeable to Peoples Bank that "withholding" the appraisal value from the Coal Group could cause it harm in the way that the Coal Group alleges. Thus, the complaint states enough facts for this Court to infer that a special relationship existed, and Peoples Bank owed the Coal Group a fiduciary duty.[4]

---

[4] Peoples Bank also makes the argument that "a fiduciary relationship between the Bank and Debtors is contradicted and barred by the plain language of the FA." However, the West Virginia Supreme Court has held that when determining the relationship between two parties, contracts are not controlling, the facts are. *See Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 76–77 (W. Va. 2010) (holding that because "West Virginia law governing the existence

Next, Peoples Bank argues that even if there was a special relationship, there was no breach of the duty. *Mem. in Supp. of Mot. to Dismiss*, at 22. However, the West Virginia Supreme Court made clear in *Glascock* that "where a bank and a lender have a special relationship, the bank has a *duty to disclose* information when the bank could reasonably foresee that withholding that information might damage the borrowers." *Glascock*, 576 S.E.2d at 546 (emphasis added). Because the Coal Group states in its complaint that Peoples Bank did *not* disclose the actual appraisal values, and it can be inferred from the complaint that Peoples Bank could "reasonably foresee that withholding that information might damage" the Coal Group, the complaint states sufficient facts that make it plausible Peoples Bank breached its duty.

Finally, Peoples Bank argues that the Coal Group "fails to allege any damages, aside from the conclusory allegations that the Bank caused the Debtors 'significant financial loss,' by destroying 'its/their business.'" *Mem. in Supp. of Mot. to Dismiss*, at 20. For the same reasons stated above in section (4)(c), the Coal Group states sufficient facts in its complaint that make it plausible it was damaged because of Peoples Bank's misrepresentation and breach of duty.

### 4. RICO Violations, Fraud, and Physical Assault

In count three through six of its complaint, the Coal Group alleges that Peoples Bank committed RICO violations, fraud, and physical assault based primarily on the actions of its agent and court-appointed receiver, Burkons. *See Compl.*, at ¶¶ 42–53. Before analyzing the merits of the disputes involving these counts, the Court will address a jurisdictional issue Peoples Bank has raised.

---

of an agency relationship recognizes that the underlying conduct of the parties can be reviewed to determine whether an agency relationship exists … whether a relationship is characterized as agency in an agreement between parties is not necessarily controlling.")

Peoples Bank argues that this Court does not even have jurisdiction to hear the RICO, fraud, or assault claims based on the actions of Burkons because of the Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126 (1881). In that case, the Court announced the aptly titled *Barton* doctrine. Under the doctrine, if a plaintiff wishes to sue a court-appointed receiver for the actions taken while serving in that capacity, the plaintiff must acquire leave from the court that appointed the receiver. *McDaniel v. Blust*, 668 F.3d 153, 156–57 (4th Cir. 2012). If the plaintiff fails to obtain leave from the appointing-court, then the secondary court in which the plaintiff has brought the relevant claims lacks subject matter jurisdiction over those claims. *See id.*

For the reasons stated in the April Order,[5] the *Barton* doctrine applies to the Coal Group's RICO violation, fraud, and physical assault claims against Receiver Burkons. Thus, Peoples Bank argues that the Coal Group cannot file claims against it based on the conduct of Burkons under an agency theory of liability, because case law applies the *Barton* doctrine to the agents of receivers. *See Reply Mem. in Supp. of Mot. to Dismiss*, at 11. The Court disagrees with Peoples Bank's interpretation of the law.

While circuits have held that the *Barton* doctrine extends to agents that are the "functional equivalent" of receivers and trustees, the agents must first be *appointed or approved* by the lower court. *See In re. DeLorean Motor Co.*, 991 F.2d. 1236, 1241 (6th Cir. 1993) (holding that under the *Barton* doctrine, "as a matter of law, counsel for trustee, *court appointed officers* who represent the estate, are the functional equivalent of a trustee, where … they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.") (emphasis added); *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (holding that the "Trustee's *court-approved counsel* … functioned as the equivalent of court-appointed officers," and the

---

[5] *Fluharty v. Peoples Bank, NA*, No. 3:17-4220, 2018 WL 1954829 (S.D.W. Va. Apr. 24, 2018).

"bankruptcy court … *approved* the Trustee's hiring" of an investigator, "*[t]hus* [the investigator] functioned as the equivalent of court appointed officers.") (emphasis added).

Therefore, while even a creditor acting as an agent of a receiver can be protected by the *Barton* doctrine, the creditor is only protected to the extent that its actions are approved by the court. *See Lawrence*, 573 F.3d at 1270 (holding that when "the bankruptcy court *approved a financing arrangement* in which the creditors … would advance the costs necessary to recover property of the estate and would receive repayment from recovered assets, if any … *to the extent* the creditors *financed* the Trustee's efforts to locate hidden assets on behalf of the estate, they … functioned as the equivalent of court appointed officers ….") (emphasis added).

Because Peoples Bank never argues that it was appointed or given approval by the lower court to assist the receiver in any specific way, Peoples Bank is not the "functional equivalent" of the receiver, and the *Barton* doctrine does not prevent this court from exercising jurisdiction.

### a. RICO Violations

Next, Peoples Bank argues that the Coal Group has not stated sufficient facts to support its RICO claims. RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Thus, to state a RICO claim, the complaint must allege 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Peoples Bank first argues that the Coal Group sets forth no facts that Peoples Bank and Burkons "formed an enterprise." *Mem. in Supp. of Mot. to Dismiss*, at 21. The Court disagrees. In *United States v. Turkette*, 452 U.S. 576, 583 (1981), the Supreme Court held that a RICO enterprise

"is *proved* by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." (emphasis added). The complaint states that "[t]he Bank asked the state court to name as successor receiver defendant Zachary B. Burkons, who the Bank knew, or should have known, was not a disinterested receiver," and that "Peoples Bank, N.A., and Zachary B. Burkons, formed an enterprise, described herein as the Johnson Loan Collection Enterprise." *Compl.*, at ¶¶ 103, 123. The complaint also alleges that "Peoples Bank, N.A., did devise and intend to devise a scheme to defraud Dennis Johnson, by withholding from him information concerning appraisals of assets held by companies owned by Mr. Johnson." *Compl.*, at ¶ 128. Finally, the complaint states that over a year later "Zachary B. Burkons did attempt to collect an extension of credit of more than $19,000,000.00 owed, and guaranteed by Dennis Johnson and companies he owned and/or controlled, to Peoples Bank, N.A.," and "Burkons did file and cause to be filed, voluntary bankruptcy petitions in the United States Bankruptcy Court." *Compl.*, at ¶¶ 124, 130. Based on these facts that assert a relationship between the Coal Group and Burkons, and that infer a common purpose between the two, it is plausible that discovery may lead to "evidence of an ongoing organization, formal or informal, and … that [the Coal Group and Burkons] function as a continuing unit."

Peoples Bank also argues that "[e]ven assuming the existence of a RICO enterprise" the Coal Group does not allege the enterprise engaged in a "pattern" of racketeering activity because it "pleads no facts indicating that the alleged acts of racketeering activity would or even could continue into the future." *Mem. in Supp. of Mot. to Dismiss*, at 21–22. Again, the Court disagrees, and finds the complaint pleads enough facts to survive a motion to dismiss.

In *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989), the Supreme Court held that to prove a pattern of racketeering activity a plaintiff must prove that the

25

racketeering predicates are "related" and pose a threat of "continued" criminal activity. The Supreme Court clarified that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Additionally, the Fourth Circuit has held that it is "cautious about basing a RICO claim on predicate acts of mail and wire fraud because [i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice," and it has reserved RICO liability for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood v. Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (internal quotation marks omitted).

While it is arguable that the complaint does not state sufficient facts to *establish* that the acts of racketeering activity will continue into the future, the Court does believe the facts alleged make it plausible that discovery may lead to this finding. The complaint states that the first predicate RICO offense was committed by Peoples Bank in June of 2015, and the first predicate RICO offense committed by Burkons was a year later in August of 2016. *Compl.*, at ¶¶ 124, 128. Additionally, it can be inferred that both offenses were committed to help the enterprise accomplish a common goal. Further, given that the complaint states that "[t]he Bank asked the state court to name as successor receiver defendant Zachary B. Burkons, who the Bank knew, or should have known, was not a disinterested receiver," it is plausible that there is a risk Peoples Bank and Burkons will continue this criminal activity in the future. *Compl.*, at ¶ 103. Finally, while the Fourth Circuit has held that it is "cautious" about basing a RICO claim on predicate acts of mail and wire fraud—such as the alleged predicate offense committed by Peoples Bank—the application of that rule is not appropriate at this stage of the proceedings, as more facts are needed to see if there are "ongoing unlawful activities whose scope and persistence pose a special threat

26

to social well-being." Therefore, the Coal Group states sufficient facts to support its RICO claims, and Peoples Bank's motion to dismiss counts three and four are denied.

### b. Fraud and Physical Assault

First, Peoples Bank argues that the Coal Group's fraud claim must be dismissed because, if it is granted, that would necessarily mean the bankruptcies were invalid to begin with—and thus Plaintiff's Trusteeship is invalid—which would eliminate his standing. *See Mem. in Supp. of Mot. to Dismiss*, at 23. The Court disagrees. As the Coal Group points out, "Trustee Fluharty had the right to ratify the improper filing by Burkons." *Compl.*, at ¶ 24. However, while he ratified the filing of Burkons, he "has not ratified the fraud … but merely refrained from raising an issue that would cause significant legal uncertainty in favor of a clearer legal path." *Id*.

Peoples Bank also argues that the Coal Group's claims of fraud and assault—committed by Burkons—must be dismissed because there are no facts to support a theory of *respondeat superior*. While the Coal Group does seem to confuse some conclusions with "facts,"[6] there are nonetheless enough facts in the complaint to state a claim for relief. Under West Virginia law, there are four factors which bear upon whether one will be liable for the acts of another based on a theory of *respondeat superior*: (1) selection and engagement of the servant; (2) payment of compensation; (3) power of dismissal; and (4) power of control. *Paxton v. Crabtree*, 400 S.E.2d 245, 252 (1990). "The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Id*.

In the complaint, the Coal Group alleges that Peoples Bank not only sought the original receivership but asked the court to name Burkons as successor receiver. *Compl.*, at ¶¶ 79, 93, 103. Additionally, the complaint states that the Bank knew or should have known that Burkons was not

---

[6] An explanation for this could be that Plaintiff is, remarkably, under the false impression that "[t]his is notice pleading." *Mem. in Opp. to Def.'s Mot. to Dismiss*, at 27.

disinterested. *Id.* at ¶ 103. The complaint also states that when traveling to Kentucky, Burkons stated that "the Bank had $19 million missing and it was his job to find it, and that Johnson and the Coal Group would have to account for every penny of the nineteen million dollars in indebtedness owed to the Bank." *Id.* at ¶¶ 104, 176. Finally, and most importantly, the Coal Group stated that Burkons threatened to break Johnson's wrists. *Id.* at ¶ 126. Based on these facts, it undoubtedly is plausible that Peoples Bank and Burkons had a separate agreement, outside of the court process, where Peoples Bank would pay Burkons in exchange for him illegally threatening Johnson. If the two did have this type of agreement, it can also be inferred that Peoples Bank had the power to exercise control over Burkons' decisions and actions.[7]

Finally, Peoples Bank states that, pursuant to *Collins v. Red Roof Inns. Inc.*, 566 S.E.2d 595, 600 (W. Va. 2002), "[t]he Bank's actions in seeking a receiver … are absolutely privileged under the litigation privilege," and therefore the Coal Group cannot assert "that the Bank is liable for Burkons' fraud and alleged assault because it sought the receivership order that ultimately appointed him." The Court finds that Peoples Bank completely misunderstands *Collins*' narrow holding.

The absolute litigation privilege that is discussed in *Collins* "protects a party to a private litigation … from liability for *defamation* irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity." *Collins*, 566 S.E.2d at 599 (emphasis added). In this case, because the Coal Group is not asserting a defamation action against Peoples Bank, *Collins* and the litigation privilege are irrelevant. The Court is only considering the "Bank's actions in seeking a receiver, and any statements made to the court during the course of

---

[7] The Court does not dispute Peoples Bank's argument that the "allegations make clear that Burkons was an agent of the *State Court*," but this fact says nothing about whether Burkons was also an agent of Peoples Bank under an extrajudicial agreement or understanding. *See Mem. in Supp. of Mot. to Dismiss*, at 24 (emphasis added).

the State Court proceedings" to assess whether the relationship between Peoples Bank and Burkons can plausibly result in a finding of an agency relationship. *Reply Mem. in Supp. of Mot. to Dismiss*, at 12. Therefore, Peoples Bank's motion to dismiss the Coal Group's fraud and assault claims is denied.

### 5. Action to Set Aside Fraudulent Conveyance

In its complaint, the Coal Group asserts that the FA should be set aside, and Peoples Bank should be "enjoined from exercising its rights under the Forbearance Agreement" because the contract constitutes a fraudulent conveyance under 11 U.S.C. § 548. *See Compl.*, at ¶¶ 186–207; *Mem. in Opp. to Def.'s Mot. to Dismiss*, at 24. Because the complaint alleges facts that satisfy the elements of § 548, the Court will not dismiss this count at this stage of the proceedings.

11 U.S.C. § 548 states in relevant part:

> [t]he trustee may avoid … any obligation … incurred by the debtor … if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such … obligation [and] … was insolvent on the date that … such obligation was incurred, or became insolvent as a result of such … obligation.

11 U.S.C. § 548 (a)(1).

The Coal Group specifically alleges that "[t]he Forbearance Agreement required the [Coal Group] to encumber certain assets that were not then encumbered," "[a]t the time of the Forbearance Agreement [members of the Coal Group]  were insolvent and/or the transfer of interests resulting from the Forbearance Agreement rendered such Obligors insolvent," and the "obligations incurred … were not in exchange for a reasonable equivalent value …." *Compl.*, at ¶¶ 189–195. Peoples Bank nonetheless argues the complaint is flawed for multiple reasons.

First, Peoples Bank states that "in order to plead a fraudulent conveyance claim, the Complaint must plead that the FA transferred an asset or incurred an obligation *in order to defeat*

*claims of creditors.*" *Mem. in Supp. of Mot. to Dismiss*, at 25 (emphasis added). This statement is incorrect. While 11 U.S.C. § 548 (a)(1)(A) does provide an option for setting aside a fraudulent conveyance when a transfer is done with "intent to hinder, delay, or defraud" a creditor, section (a)(1)(B), the provision the Coal Group is suing under, does not require an intent element. *See* 11 U.S.C. § 548 (a)(1)(A)–(B).

Next, Peoples Bank states that the complaint is flawed because the Coal Group alleges that "certain 'non-obligors' guaranteed indebtedness or pledged assets to the Bank under the FA," but because all the parties to this action were already obligors to the Bank, the Coal Group must be attempting to assert a fraudulent conveyance claim on behalf of entities not parties to this case. *Mem. in Supp. of Mot. to Dismiss*, at 25. This issue is of no concern to the Court, because the Coal Group also alleges that "[t]he Forbearance Agreement required [it] to encumber certain assets that were then *unencumbered*." *Compl.*, at ¶ 189 (emphasis added).

Finally, Peoples Bank argues that the Coal Group has not actually *identified* any "obligation incurred," and therefore the complaint cannot plead the obligation was incurred for "less than reasonably equivalent value." *See Mem. in Supp. of Mot. to Dismiss*, at 25. However, paragraph forty-six of the complaint alleges that "at the Bank's insistence … to buy time for the new financing plan to be put in place, Johnson agreed to cause and did cause [a] Coal Group component … to pledge security interests in additional coal leasehold interests to cure the defaults." *Compl.*, at ¶ 46. While Peoples Bank cites a Virginia case that holds that securitization of antecedent debt "is presumed to be" for reasonably equivalent value under § 548, the Virginia court dismissed that case pursuant to a motion for *summary judgment*, not a motion to dismiss. *See Mem. in Supp. of Mot. to Dismiss*, at 14; *Tavenner v. Wells Fargo Bank, N.A. (In re Ferguson)*, 11-32141-KRH, Chapter 7, APN 13-03067-KRH, LEXIS 1046, at *2 (Bankr. E.D. Va. Mar. 18,

2014). In this case, the Coal Group states in its complaint that the securitization was not for a reasonably equivalent value, and whether this is true is an issue of fact that cannot be decided at this stage of the proceedings. Therefore, the Court denies Peoples Bank's motion to dismiss the Coal Group's claim to set aside a fraudulent conveyance.

### 6. Tortious Interference with a Business Relationship and Conversion

Peoples Bank argues that the Coal Group's claims for tortious interference and unlawful setoff/conversion fails because its acts were not "wrongful" and did not result in any "damage." *Mem. in Supp. of Mot. to Dismiss*, at 18–20. The Court disagrees with its arguments.

To establish a prima facia case for tortious interference, a plaintiff must prove: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. *See Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166, 167 (W. Va. 1983).

The Coal Group alleges that Peoples Bank interfered with its business relationship with Prater Creek Coal Corporation by, among other acts, wrongfully sweeping the "insurance monies from [an] account held in the name of [the Coal Group] but intended/believed to be a joint account for the property damage interests of [the Coal Group] and Prater Creek." *Compl.*, at ¶¶ 208–11. Peoples Bank argues that the alleged sweep was "neither 'wrongful,' nor did it result in any damage to [the Coal Group] because that money belonged to Prater Creek as loss payee." *Mem. in Supp. of Mot. to Dismiss*, at 26. However, the Coal Group asserts in its complaint that the funds swept were intended for the "joint" interests of it and Prater Creek, "were critical to restarting operations at Ivel," the sweep "destroyed" its relationship with Prater Creek, and as a result of the interference it "did not have funds to cure the default that Prater Creek declared." *Compl.*, at ¶¶

31

50, 83, 210. Thus, the complaint states facts that the interference caused harm and damages, and the Court denies Peoples Bank's motion to dismiss the Coal Group's claim of tortious interference. Additionally, because Peoples Bank argues that the Coal Group's conversion claim "fails as a matter of law for the same reasons" as the tortious interference claim, the Court denies Peoples Bank's motion to dismiss the Coal Group's unlawful setoff/conversion claim for the same reasons stated above. *See Mem. in Supp. of Mot. to Dismiss*, at 26.

### 7. Bad Faith Claims Against Insurers

In count nine of its complaint, the Coal Group alleges that Peoples Bank is liable for the bad faith of Peoples Insurance Company by virtue of an agency relationship. *See Compl.*, at ¶¶ 216–222. Because this Court has already granted a motion to dismiss this bad faith claim in favor of Peoples Insurance Company,[8] we must dismiss this claim by the Coal Group for the same reasons stated in the June Order.

### 8. Negligence

In its complaint, the Coal Group alleges that Peoples Bank acted negligently when it breached its duty of care by "failing to properly register the account holders of the account [the Coal Group] established," and "as a direct result … the Plaintiffs suffered economic damage including the loss of the Ivel Prep plant …." *See Compl.*, at ¶¶ 223–26. Peoples Bank argues in response that this negligence claim must be dismissed because "[n]owhere is it alleged that the Bank was instructed to open a joint account and failed to do so—only that Johnson *believed* the account would be a joint account." *Mem. in Supp. of Mot. to Dismiss*, at 27 (emphasis in original).

While the complaint may not *directly* state that Peoples Bank or its agents were instructed to open a joint account, the complaint does assert that Peoples Bank failed to "properly" register

---

[8] *See Fluharty v. Peoples Bank, NA ("June Order")*, No. 3:17-4220, 2018 WL 3097329 (S.D.W. Va. June 22, 2018).

the account holder. Because the Court must view all inferences in favor of the Coal Group, it can be reasonably inferred from this allegation that Peoples Bank was instructed to open a joint account. Therefore, the Court denies Peoples Bank's motion to dismiss the Coal Group's claim of negligence.

### 9. Void Collateral Assignment of Membership Interest

The Coal Group asserts that the Collateral Assignment of Membership Interest ("CA") agreement, which granted Peoples Bank a security in all of Johnson's right, title, and ownership interest in at least one corporation of the Coal Group, was not supported by valid consideration. *See Compl.*, at ¶¶ 227–29. In response, Peoples Bank argues that Johnson *acknowledged* that the "Collateral Assignment was supported by … consideration" based on the terms of the CA itself. *Mem. in Supp. of Mot. to Dismiss*, at 28. Peoples Bank attached the CA to its motion to dismiss as an exhibit for the Court to view and consider, arguing that it is an "integral" document not attached to the complaint. *See id.*; *Exhibit F*, ECF No. 27-6.

While normally the Court does not consider matters outside of the pleadings at this stage of litigation, "when a defendant attaches a document to its motion to dismiss, a court *may* consider it in determining whether to dismiss the complaint if it was integral to *and* explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n*, 367 F.3d at 234 (internal quotations omitted) (emphasis added). The purpose of this exception is to prevent the plaintiff from maintaining a claim "by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement" could not support the claim asserted. *See id.* (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Here, the Coal Group does not challenge the authenticity of the CA agreement. Additionally, the Court finds that the CA is "integral" to and "relied" on in the complaint, as the very basis of the Coal Group's claim is that there is a flaw in the terms or the making of the agreement, and the Coal Group has "extracted" certain statements from the document. *See Compl.*, at ⁋ 51. Overall, the Coal Group is attempting to do what the exception seeks to prevent: address a document that is essential to prevail in its claim, but prevent the Court from examining the document further to see if the claim is meritless. Therefore, the Court will examine and consider the terms of the CA in determining whether to dismiss the Coal Group's claim for lack of consideration.

In response to Peoples Bank's argument that Johnson *acknowledged* that the CA "was supported by … consideration" based on the terms of the CA itself, the Court finds this fact irrelevant. A contract must *actually* be supported by consideration, and thus a provision in the contract that states consideration is valid does not end the inquiry. *See First Nat. Bank of Gallipolis v. Marietta Mfg. Co.*, 153 S.E.2d 172, 177 (W. Va. 1967) (holding that "consideration is an essential element of, and is necessary to the enforceability or validity of a contract" and the principle "is so well established that citation of authority therefor is unnecessary."). Thus, the key question is whether the CA's language that states the agreement was signed "[t]o secure the complete and timely satisfaction of all liabilities, indebtedness and obligations of Borrower to Lender under the Loan Agreement, this Agreement, and any other loan documents related to the Loan," must result in a finding of valid consideration. The Court finds that it does not. Based on the facts in the complaint, specifically the fact that the execution of the FA was signed months *after* the CA,[9] it is not clear to the Court what benefit—if any—the Coal Group derived from the

---

[9] *See Compl.*, at ⁋⁋ 51–52.

CA, or what detriment—if any—Peoples Bank incurred because of the execution of the CA. *See Young v. Young*, 808 S.E.2d at 631, 636 (W. Va. 2017) (holding that "where there is no benefit moving to the promisor or damage or injury to the promisee, the contract is void," and that it is "axiomatic that past consideration already given for a previous agreement cannot constitute valid consideration for a new agreement.") (internal quotations omitted). Therefore, the complaint states sufficient facts that make it plausible the CA is void as a result of no consideration, and Peoples Bank's motion to dismiss this claim is denied.[10]

### 10. Contempt

In count thirteen, the Coal Group asserts a claim against Peoples Bank for contempt, arguing that Peoples Bank violated the "automatic stay" when it sent the $500,000 previously swept from the Coal Group's account to Prater Creek. *See Compl.*, at ¶¶ 230–31. However, because the Coal Group does not allege that Peoples Bank's actions violated any section of 11 U.S.C. § 362, the Court must grant Peoples Bank's motion to dismiss count thirteen.

11 U.S.C. § 362(a) states that "a petition filed under section 301, 302, or 303 of this title … *operates as a stay*, applicable to all entities," of certain actions. (emphasis added). Such actions include "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," or "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(6) and (7). Essentially, an automatic stay prevents all "collection proceedings" against the debtor from taking effect *after* Chapter seven or eleven bankruptcy has been filed. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017).

---

[10] Peoples Bank also argues that under West Virginia law "courts are not to inquire into the adequacy of consideration." *Mem. in Supp. of Mot. to Dismiss*, at 28. However, there is a fine line between inquiring into the *adequacy* of consideration and finding that none exists. The Court does not find that consideration is not adequate. Rather, the Court finds that it is plausible no consideration exists at all.

Here, the bankruptcy petition at issue was filed on February 12, 2016, making the automatic stay effective on that day. *See Compl.*, at ¶¶ 87, 231. Thus, the complaint would state a plausible claim for relief for contempt if it alleged that Peoples Bank attempted any "collection proceeding" after February 12, 2016. However, the Coal Group does not assert this fact. Rather, the Coal Group merely states that after February 12, 2016, "the Bank paid $500,000.00 to Prater Creek," and this violated the automatic stay because it "unilaterally deprived SMT of any interest in the funds," and the payment was not "honoring the interests of the Bankruptcy Estate of SMT…." *Compl.*, at ¶ 88; *Mem. in Opp. to Def.'s Mot. to Dismiss*, at 29. The Coal Group does not cite any law to support the proposition that an automatic stay is violated when a party is "deprived of any interest," or when its interests are not "honored." However, the statute and case law do make clear that an automatic stay is violated when a "collection proceeding" occurs, and Peoples Bank's *payment* of money, to a third party, which was already in its possession at the time the stay took effect, logically cannot be considered a *collection* proceeding. Because the Coal Group admits in its complaint that Peoples Bank's *removal* of $500,000—the only action that is arguably a "collection"—occurred on November 24, 2015, before the automatic stay took effect on February 12, 2016, the complaint cannot state a plausible claim for relief. *Compl.*, at ¶ 82. Therefore, Peoples Bank's motion to dismiss the Coal Group's claim for contempt is granted.

### 11. Liability for Reimbursement Under State-Court Receiver Order

The Coal Group alleges that, "[p]ursuant to an Order … entered in the State Court Action," Peoples Bank must indemnify it for certain damages. *Compl.*, at ¶¶ 234–39. The Court finds that there are enough facts in the complaint to state a plausible claim for relief for indemnification.

The provision at issue in the state-court order—attached as an exhibit to Peoples Bank's motion to dismiss and considered by this Court under the *Trigon* exception—states that "Plaintiff

and the Receiver shall indemnify … all of the Defendants for any … damages (including attorneys' fees and costs) caused to Defendants … by acts … taken by Plaintiff and/or Receiver pursuant to this Order." *Exhibit B*, ECF No. 27-2, at 6. Peoples Bank argues that "[n]owhere in the Complaint does Plaintiff articulate any liability, loss or damages that any one of these specific Debtors incurred during the time period of the Receiver Order." The Court disagrees. As discussed above, the Coal Group has sufficiently pled that receiver Burkons[11] committed assault, and that Peoples Bank is liable for this assault under the doctrine of *respondeat superior*. Therefore, it can be inferred that the alleged assault—which was an act "taken by Plaintiff and/or Receiver pursuant" to the receiver order—"caused [damages] to Defendants," for which Peoples Bank "shall indemnify." Therefore, the Coal Group alleges enough facts to state a plausible claim for relief, and Peoples Bank's motion to dismiss the indemnification claim is denied.

### 12. Punitive Damages

Finally, the Coal Group's claim for punitive damages must be dismissed, as punitive damages are a form of relief, not a separate cause of action recognized under West Virginia law. *See Miller v. Carelink Health Plans, Inc.*, 82 F. Supp. 2d 574, 579 n. 6 (S.D.W. Va. 2000) (citing *Cook v. Heck's, Inc.*, 342 S.E.2d 453, 461 n. 3 (W. Va. 1986)).

### IV. CONCLUSION

Based upon the analysis provided above, the Court **GRANTS** Defendant Peoples Bank's Motion to Dismiss only with regard to Plaintiff's claims for bad faith against insurers, contempt, and punitive damages, and **DENIES** the remainder of Defendant Peoples Bank's Motion to Dismiss.

---

[11] While the Order originally appointed David G. Zatezalo as receiver, Mr. Zatezalo later filed a motion to withdraw, and Burkons was then named as successor receiver. *Compl.*, at ¶¶ 93, 102–03.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          September 17, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE